

FILED & JUDGMENT ENTERED
Steven T. Salata

Mar  19  2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_J. Craig Whitley_
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SAMUEL T. JENNINGS | ) | Case No. 12-32615 |
| DONNA L. JENNINGS | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

## ORDER DENYING CONVERSION TO CHAPTER 13

THIS MATTER is before this Court upon Motion of the Chapter 7 Debtors, Samuel T. Jennings and Donna L. Jennings ("Debtors") to convert to Chapter 13, filed January 29, 2013. The Chapter 7 Trustee filed a Response and Objection to the Motion on February 11, 2013 on the grounds that the conversion would be a bad faith conversion in an effort to further the concealment of assets and false oaths made by the Jennings.

A hearing was held on shortened notice on February 19, 2013.  R. Keith Johnson appeared as Chapter 7 Trustee ("Trustee") and Attorney for the Trustee.  Brian P. Hayes represented the Debtors.

For the reasons stated, below, the Motion to convert to chapter 13 is **DENIED**.

1

## JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§151, 157, 1334, and the General Order of Reference entered by the United States District Court for the Western District of North Carolina on July 30, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

## PROCEDURAL HISTORY AND FINDINGS OF FACT

1.    The Jennings filed a voluntary Chapter 7 bankruptcy case in this Court on October 31, 2012.

2.    In their Voluntary Petition, the Jennings stated that their address was 900 Lyerly Ridge Road, Concord, NC.

3.    On the second page of their Petition, the Jennings indicated that their residence or their principal place of business had been in the Western District of North Carolina for one hundred eighty (180) days preceding the date of the petition.  That statement was untrue in that the Jenningses' residence is located in the Middle District of North Carolina.

4.    In their bankruptcy schedules the Jennings indicated that they owned a "RESIDENCE: 4 bedroom, 2.5 Bath Brick Home" which was to be surrendered, said residence having a value of $340,000.00, subject to secured claims of $521,700.00. Schedule A, Oct. 31, 2012, ECF No. 1 at 10.

5.    In Schedule D, the Jennings disclosed three (3) secured creditors, one secured by the 2006 Cadillac, and the other two (2) being secured by the four bedroom, 2.5 bath brick home. Schedule D, Oct. 31, 2012, ECF No. 1 at 16.

6.   In Schedule E, the Jennings indicated that they owed total priority claims of $22,825.00. These include a property tax claim of $3,433.00.  The property to which that tax claim relates is not identified. Schedule E, Oct. 31, 2012, ECF No. 1 at 18.

7.   In Schedule F, the Jennings show total unsecured debts of $46,545.00. Schedule F, Oct. 31, 2012, ECF No. 1. at 21.

8.   On Question One (1) of the Statement of Financial Affairs the Jennings indicated that in 2010, Donna Jennings had income from Premier Alliance of $152,833.00.  Statement of Financial Affairs, Oct. 31, 2012, ECF No. 1. at 27.

9.   Further, the Jennings indicated that during 2010, 2011, and 2012, Samuel Jennings had received Social Security benefits of approximately $17,000.00 per year.  Their Statement of Financial Affairs also shows that Donna Jennings received Social Security benefits of $95,269.00 in 2010;  $179,314.00 in 2011; and $64,134.00 in 2012. *Id.* at 28.

10.  In response to Question 3.a. of that Statement of Financial Affairs, the Jennings affirmed that during the ninety (90) days preceding the filing of the bankruptcy case they had not paid any creditor more than $600.00. *Id.*

11.  In response to Question Seven (7) of the Statement of Financial Affairs, the Jennings indicated that during the year immediately preceding the commencement of the bankruptcy case they had not made any gifts of more than $200.00 in value, apart from ordinary and usual gifts to family members. *Id.* at 29.

12.  In response to Question Ten (10) of the Statement of Financial Affairs, the Jennings indicated that they had made no transfers of property, other than in the ordinary course of their business or financial affairs, within two (2) years before the filing of the bankruptcy case. *Id.* at 30.

13.   In their Statement of Intention, the Jennings expressed an intention to surrender their 2006 Cadillac automobile, as well as their 4 bedroom, 2.5 bath brick home.  Statement of Intent Intention, October 31, 2012, ECF. No. 1 at 35.

14.   The Section 341 Meeting of Creditors was conducted on December 5, 2012.  The Jennings were present and sworn and testified at that meeting.

15.   At the Meeting of Creditors, the Trustee questioned the Jennings and reviewed with them the documentation which they had previously provided to him.

16.   On December 6, 2012, the Trustee wrote to the attorney for the Jennings seeking additional information relating to statements made at the Meeting of Creditors and relating to a further review of the schedules and statements.  The Trustee specifically requested (a) bank records (statements and check registers) regarding an IRA distribution in 2011 of $154,070.00 and deposit of the same into the Jenningses' account, most likely at Wells Fargo; (b) copies of their tax return for 2010, (c) a copy of their 2012 tax return when prepared, and (d) an explanation of the large Social Security benefits received by Donna Jennings reflected in the Statement of Financial Affairs.  ECF. No. 14 at 3.

17.   Later, in reviewing the Cabarrus County real property records relating to the value of the Jennings real property at 900 Lyerly Ridge Road, Concord NC 28027, and their intent to surrender same, the Trustee discovered that on June 28, 2012, or one hundred twenty-four (124) days before the bankruptcy filing, the Jennings had transferred a second residence located at 1203 Lempster Drive, NW, Concord, NC to their daughter Sheena Jennings.  The real property record indicated a purchase price of $153,000.00.  This transfer was not disclosed by the Jennings in their Bankruptcy Petition and Schedules. It was not disclosed by them to the Trustee at the First Meeting or thereafter.

4

18.   Upon learning of this undisclosed transfer, the Trustee obtained a copy of the HUD-1 Settlement Statement from the closing attorney. ECF No. 18 at 24.   After retirement of the mortgage on that residence, the Settlement Statement shows a transfer of equity by the Jennings to their daughter of $15,300.00. *Id.*   Additionally, the Jennings paid the closing costs associated with that transfer in the amount of $3,812.56.   *Id.*   Such closing costs are typically paid by the purchaser.   Meanwhile, the HUD-1 has Sheena Jennings taking home $582.23 in the transaction. *Id.*

19.   The Trustee concluded that the Jennings effectively gave their daughter $19,694.79 within one (1) year before the filing of the bankruptcy case and failed to disclose the transfer in their bankruptcy petition.   The Trustee believed that the transfer was avoidable as a fraudulent transfer, and by nondisclosure, the Jennings had made several false oaths in their Bankruptcy Petition.

20.   When the Trustee confronted the Jennings with these newly discovered facts, the Jennings moved to convert their case to Chapter 13.   Motion to Convert Case from Chapter 7 to Chapter 13, filed January 29, 2012.   ECF No. 12.

21.   With the conversion motion pending, the Jennings amended their Petition to correct these and other misstatements.   The Jennings filed an amended Statement of Financial Affairs on February 7, 2013. ECF. No. 15. That Amended Statement revealed for the first time $17,394 of earnings income by Donna Jennings in 2011 and $2,836 of income in 2012, from an entity known as the Gold Refinery. *Id.*   Donna Jennings' 2012 Social Security income, previously reported as $64,134 was reduced to $6,620.   Similarly, her 2011 Social Security Income was reduced from $179,314 to $7,850.   Donna Jennings 2010 Social Security income, previously attested to as being $95,269, was restated to be an IRA withdrawal.   Two previously undisclosed

IRA withdrawals by Donna Jennings were revealed:  a distribution of $154,070 in 2011 and $49,500 in 2012.  *Id*.  However, once again the Jenningses' transfer of the residence to the daughter was not disclosed.

22.  On February 11, 2013, the Trustee objected to the Debtors' discharge under 11 U.S.C. §727 [Adv. 13-3019] and separately sued Sheena Jennings to avoid the transfer of the Lempster Dr. residence under 11 U.S.C. §548 and recover the property or its value under 11 U.S.C. §550. [Adv. 13-3020].  In the discharge litigation, the Trustee maintains that the Jennings willfully concealed the transfer of the Lempster Drive residence and the implicit gift to their daughter. The Trustee contends the Debtors are guilty of concealing estate property and of making false oaths in connection with their petition.

23.  That same day, on February 11, 2013, the Jennings amended their Statement of Financial Affairs for a second time, to disclose the aforementioned prepetition transfers.  In this amendment, they also revealed a Gatlinburg, TN timeshare property not mentioned in the original petition nor the prior amendment.   ECF No. 21.

24.  The Trustee then objected to the Jennings' conversion of the case to Chapter 13. Having uncovered the transfer of the residence and other nondisclosures by the Jennings and taken steps to remedy these matters, the Trustee considers the Jennings conversion as nothing more than a bad faith attempt to avoid the consequences of their misdeeds.

25. The Jennings, on the other hand, maintain these nondisclosures were innocent mistakes.  They maintain that the transfer of the residence was not fraudulent; while title to the residence was in their names, their daughter resided in the house and made the payments on the mortgage. They contend this was her house, not theirs. However, if they are incorrect, they intend to "deal" with the situation in Chapter 13

6

26.   Apart from defanging the Chapter 7 Trustee, the Jennings have no real ability to deal with these issues (or their other creditors) in Chapter 13.  The Jenningses' Petition shows a net monthly budget deficit of $477.00 (Combined net monthly income $6,613.00 less monthly expenses of $7,090.00).  Schedule J, October 31, 2012, ECF No. 1 at 25.  By itself, to "repay" a potentially avoidable transfer of $19,694.79 in a five-year plan (without interest) would require monthly payments of  $328.25. Add in five percent (5%) interest, and the monthly outlay increases to $371.   Between their budget deficit, Chapter 13 plan payment requirements (Trustee's fees and payments to unsecured creditors), and this looming transfer, the Jennings lack the ability to fund a Chapter 13 plan.

## ANALYSIS

The Jennings seek to convert their case to Chapter 13 under 11 U.S.C. §706(a).  That section provides that, "(a) [t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 112, 1208, or 1307 of this title.  Any waiver of the right to convert a case under this subsection is unenforceable."

"The statutory language 'at any time' appears to confer an absolute right to convert so long as the case was not previously converted to a Chapter 11, 12, or 13." *In re Goines,* 397 B.R. 26, 30 (Bankr. M.D.N.C. 2007).  However, in 2007, the Supreme Court held in *Marrama v. Citizens Bank of Massachusetts* that a Chapter 7 debtor forfeited the right to convert to Chapter 13 by engaging in pre-petition bad faith conduct. 549 U.S. 365, 371, (2007).

In *Marrama,* the debtor misrepresented the value of real property on his petition and failed to disclose that he had transferred his property during the preceding year.  *Id.* at 368. When the Chapter 7 trustee sought recovery of the property, the debtor moved to convert the case to Chapter 13, and the trustee objected. *Id.* at 368-69.

7

The Court held that the bad faith conduct by the debtor established "cause" that would have warranted dismissal or reconversion of her Chapter 13 case, which is "tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.* at 373. In other words, a Chapter 7 debtor loses the absolute right to convert to a Chapter 13 if he or she engages in pre-petition bad faith conduct. *Id.* "That individual is not a member of the class of 'honest but unfortunate debtor[s]' the bankruptcy laws were enacted to protect." *Id.*

*Marrama* does not define "bad-faith conduct" but states that the conduct of the debtor must be "atypical" and limited to "extraordinary cases." *Id.* at 375, n. 11. *Marrama* also did not discuss which party has the burden of proof on the issue of bad faith conduct. However, in *In re Goines*, Judge Waldrep determined that the party objecting to conversion has the burden of proof on the issue of bad faith and that the standard is by a preponderance of evidence. 397 B.R. at 33. As such, the Trustee has the burden of showing that the Jennings have acted in such bad faith as to qualify them as the "atypical" debtor described by *Marrama. Id.*

In the aftermath of *Marrama,* other courts have denied conversion from Chapter 7 to Chapter 13 where debtors made prepetition fraudulent transfers, improperly represented their financial situation on their schedules, and moved to convert their case due to the litigation filed by the trustee. For example, in *In re Goines*, the debtor's undisclosed transfer of real property to herself and her brothers fifty-four (54) days prior to filing, as well as the misrepresentations on her schedules and at her meeting of creditors, were held to show bad faith warranting a denial of conversion. 397 B.R. at 33-35. Similarly, in *In re Southern*, a court denied a debtor's motion to convert for bad faith because the debtor failed to disclose all of his assets, did not accurately report his income, failed to disclose all of his transfers, lied at his §341 meeting, and failed to cooperate with the Trustee. *In re Southern*, 2011 WL 1226058, at *3 (Bankr. M.D.N.C. March 29, 2011). *See also In re Piccoli,* No. 06–2142, 2007 WL 2822001 at *2–5 (E.D.Pa. Sept. 27, 2007) (2007 WL 2822001)(district court affirmed bankruptcy court, which denied on bad faith

8

grounds the debtor's motion to convert because the debtor conveyed real property to his daughter and son-in-law sixteen (16) months before filing and his amended schedules).

Just as in *In re Goines* and *In re Southern,* under the facts presented, the Jenningses' motion to convert must also be denied for bad faith. This conversion is a transparent attempt to prevent the Trustee from recovering assets for the bankruptcy estate and to block the Trustee's pending lawsuits against them and their daughter. Having failed to disclose that they had deeded a residence to their daughter before the bankruptcy filing, an apparent $19,694.79 gift, when that gift was discovered, the Jennings moved to convert their case to Chapter 13. It was only after the Trustee filed two adversary proceedings against the Jennings and their daughter that these Debtors listed the transfer of the property to their daughter. The timing alone suggests the purpose of the conversion was improper.

Further, this was not the only failure by these debtors to disclose their finances. As noted above, the Jennings failed to disclose some $20,000 of income from, and their ownership interest, in the Gold Refinery. They failed to schedule their ownership of the Gatlinburg time-share, not just once, but through the creditors' meeting, and a subsequent amendment of the petition. Two IRA withdrawals totaling over $200,000 by Donna Jennings were not disclosed in the Petition. Finally, Donna Jennings' Social Security income was inaccurately reported: a) 2010 income was originally portrayed as $64,134 but was apparently only $6,620; 2011 Social Security Income was not really $179,314 but only to $7,850; and (c) Donna Jennings' 2010 Social Security income ($95,269) turns out to be another IRA withdrawal.

The Jennings do not deny these salient facts, but maintain these were innocent mistakes. However, the undisclosed transfer to their daughter, coupled with these repeated misrepresentations on their schedules reflect more than innocent mistakes; they show a complete disregard of the Jenningses' obligations to make complete and accurate disclosures of their financial affairs in their bankruptcy petition. This failure warrants denial of their conversion

motion.

Accordingly, the Motion to Convert to 13 is **DENIED**.

**SO ORDERED.**

This Order has been signed electronically.          United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.